Filed 9/23/15  P. v. Hearn CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>EBONI ROCHELLE HEARN,<br><br>　　　Defendant and Appellant. | B258735<br><br>(Los Angeles County<br>Super. Ct. No. BA418217) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Bob S. Bowers, Jr., Judge.  Affirmed.

　　　Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey, Supervising Deputy Attorney General, and Mary Sanchez, Deputy Attorney General, for Plaintiff and Respondent.

_____

Eboni Rochelle Hearn appeals jury verdicts of guilty on two counts of grand theft and one count of second degree commercial burglary. We affirm.

## BACKGROUND

An amended information charged Hearn with 10 counts of felony grand theft of personal property exceeding $950, in violation of Penal Code section 487, subdivision (a),[1] and four counts of felony second degree commercial burglary, in violation of section 459. Hearn pleaded not guilty. A codefendant charged with 12 counts of grand theft and commercial burglary pleaded guilty to two counts of grand theft, and the other counts against her were dismissed; she is not a party to this appeal.

During jury deliberations, the trial court dismissed one count of grand theft for insufficient evidence under section 1118.1. The trial court accepted a partial verdict of guilty on counts 12, 13, and 19 and not guilty on counts 1, 3, and 4. One juror was discharged, an alternate juror was substituted, and the jury again began deliberation on the remaining counts. The jury acquitted Hearn on one of those counts. After the jury could not reach a verdict on the then remaining counts, the court declared a mistrial, denied Respondent's request to retry those counts, and dismissed them. The trial court sentenced Hearn to four years and four months in county jail, fines, and fees. The court selected count 12, second degree burglary, as the base count and sentenced Hearn to the upper term of three years; on each of counts 13 and 19, Hearn received one-third the midterm or eight months each, to run consecutively to count 12. Hearn filed a timely appeal.

**Count 12 (felony second degree commercial burglary, April 4, 2013)**

At trial, Matthew Entrekin testified that he was working as a store manager at a CVS Pharmacy in Encino on April 4, 2013, when a group of four women, including Hearn, entered the store. Hearn and the group caught his attention because they had been in the store many times before for "various reasons." On those earlier occasions, after the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

group left, large amounts of beauty-related products were missing. The group was known as "'the happy crew.'"

The group used what Entrekin called a diversion tactic, spreading out inside the store to divide managers' attention. He saw two of the women go into the deodorant aisle, one to cosmetics, and one to the liquor section. He focused on the women in the deodorant aisle, and saw one acting as a lookout for the other, who was stuffing multiple deodorants into a large purse or "booster bag." The group started to walk out together, and Entrekin stopped them at the door after they passed the cash registers without paying. He told them that he had seen what they had done and insisted that they give back the merchandise in the purse. Hearn, who was holding the purse, shoved him through the doors and walked away, and following store policy not to touch anyone, he let her go. He told the group that the police were on their way and they laughed at him, getting into a car that was pulling out and driving away. He wrote down the license plate number and called the police.

Back in the store, Entrekin went to the deodorant aisle and "we did what's called a pilferage report." Using an "inventory gun," he scanned the section and looked at what the digital system reported as the inventory in stock. When there was a large discrepancy between what was supposed to be on the aisle and what was actually there, "then we suspect it's a wipe out," and the store would count each item that was no longer in the inventory, generating a total of what had been lost. He could see a gap in the top three shelves of deodorant sprays. After scanning all the items and comparing the result to the inventory that the system reported was in the store, he determined that $600 of body sprays and deodorants were missing. Inventories were taken either daily or weekly.

**Count 13 (felony grand theft of personal property, April 12, 2013)**

Annalyn Dantes testified that she was working as a cashier at Walgreens on Sunset and Vine on April 12, 2013, when she saw around four African-American women who had been in the cosmetics section running out with some bags. She told them to stop and hand her the bags. One of them was Hearn, who stared at her, started laughing, and ran. Dantes chased them outside and wrote down the license plate of their car, which she later

gave to the manager. A surveillance video played for the jury showed the four coming into the store and separating into different areas, with one serving as a distraction while another put merchandise into bags. Dantes had circled two photographs in a six-pack photographic lineup, and one of the individuals in the photographs was Hearn.

The Walgreens store manager testified that he watched the surveillance video the following day, and also did an inventory to determine how much merchandise was missing. He testified that each product arriving at the store was scanned into a computer system using a computer code on the product or tag. When a product was purchased, the item was again scanned and immediately subtracted from the computer system to reflect the change in inventory. The discrepancy in the April 13, 2013 report between what the computer system reported should be on hand in the cosmetics department and what was actually on the shelf showed missing products with a retail value of $4,300.

**Count 19 (felony grand theft of personal property, July 17, 2013)**

Christina Navarro testified that she was a loss prevention specialist who did floor surveillance at CVS. She was on the lookout for the "happy crew," a group of females coming into CVS stores and stealing cosmetics. As part of her investigation, Navarro retrieved a surveillance video of store number 9670 from July 17, 2013 at 7:54 p.m. The jury viewed the recording, which Navarro testified accurately depicted the store entryway and the cosmetics section. On July 18, 2013, she generated a "pilferage report" which showed a loss of $2,045.68 from the cosmetics section. On cross-examination, she explained that when an item is scanned for purchase, the transaction goes into the computer system which then reflects that the item was purchased and is no longer on the shelf. A pilferage report would be generated when an employee realizes that products were missing that had not been purchased, usually shortly after a theft was suspected. An employee would go into the area and using an "'R.F. Unit'" ( a "gun" pointed at the barcodes), "actually scans the area so that the system can count what's been missing."

**Defense witnesses**

An expert witness testified that the passage of time and experimenter bias, among other variables, can have an impact on memory and suggestibility, as well as on

eyewitness identifications. Hearn's neighbor for eight years testified that she had a reputation for telling the truth, and did not have a reputation as someone who would steal. Hearn's disabled mother testified that Hearn lived with her and provided in-home care in 2012 and 2013.

## DISCUSSION

### I.      Substantial evidence supported the grand theft guilty verdicts.

Hearn argues that the guilty verdicts on counts 13 and 19 were not supported by substantial evidence because "in neither situation was there any evidence presented as to when an inventory was taken prior to the dates of the theft," so that there was insufficient evidence that the value of the property taken was over $950, as required by section 487, subdivision (a). Viewing the evidence in the light most favorable to the jury's verdict (*People v. Marshall* (1997) 15 Cal.4th 1, 34), we disagree.

As to count 13, the Walgreens store manager testified that when each item arrived at the store, it was scanned into inventory, and when an item was purchased it was again scanned and immediately subtracted from the computer system to reflect a change in the store's inventory. He testified that the day after the theft he did an inventory to determine how much was missing. This was substantial evidence that the Walgreens computer inventory was continuously refreshed, adding items as soon as they came in and subtracting items when they were purchased.

As to count 19, Navarro testified that she generated a pilferage report on July 18, 2013, the day after surveillance video showed the "happy crew" visited a CVS store. She explained that when an item was purchased the computer system reflected that the item was no longer on the shelf and was no longer in the inventory. An employee scanning the barcodes of the items on the shelf could determine what was missing by comparing the result to what the system reported had not yet been sold and should therefore be on the shelf. A jury could reasonably conclude that the computer system kept a running inventory, immediately subtracting purchased items from the total of what was available for purchase. In each count, sufficient evidence supported a conclusion that the value of the stolen merchandise exceeded $950.

5

## II.    The jury was properly instructed with CALCRIM No. 1802

Hearn contends that the court confused the jury by instructing the jury with CALCRIM No. 1801 together with CALCRIM No. 1802.  As given, CALCRIM No. 1801 states:  "The defendant committed grand theft if she stole property worth more than $950."  CALCRIM No. 1802, as given, states:  "If you conclude that the defendant committed more than one theft, you must then decide if the defendant committed multiple petty thefts or a single grand theft.  To prove that the defendant is guilty of a single grand theft, the People must prove that:  [¶]  1.  The defendant committed theft of property from the same owner or possessor on more than one occasion;  [¶]  2.  The combined value of the property was over $950;  [¶]  AND  [¶]  3.  The defendant obtained the property as part of a single, overall plan or objective."  Hearn did not object at trial, and so she has forfeited this claim.  "A party may not [complain] on appeal that an instruction correct in law . . . [required] clarification[] without first requesting such clarification at trial."  (*People v. Hillhouse* (2002) 27 Cal.4th 469, 503.)

In any event, we reject Hearn's argument that CALCRIM No. 1802 might have led the jury to improperly believe it could accumulate the amount of merchandise stolen in counts 13 (Walgreens) and 19 (CVS) to reach the $950 threshold for grand theft, even though the two counts did not involve the same owner or possessor.  When the jury was instructed, there remained eight counts of grand theft from CVS against Hearn (counts 1, 2, 3, 4, 6, 9, 15, 17, & 19).  As a result, it was then relevant, rather than confusing, to tell the jury that amounts taken from the same owner or possessor (CVS) could be accumulated.  The jury eventually acquitted Hearn of counts 1, 3, 4, and 15, and failed to reach verdicts on counts 6, 9, and 17, convicting her of a single count of grand theft against CVS (count 19) and one against Walgreens (count 13).  CALCRIM No. 1802, while unnecessary to the counts of grand theft on which Hearn was convicted, was properly given at the close of evidence.

## III.    Hearn must file a petition in trial court to reduce her sentence in count 12.

After Hearn's conviction and sentencing, the voters approved Proposition 47 on November 4, 2014, making certain theft-related offenses misdemeanors (unless

6

committed by defendants with disqualifying prior convictions).  (*People v. Shabazz* (2015) 237 Cal.App.4th 303, 306.)  Proposition 47 added to the Penal Code (among other provisions) section 459.5, which provides in subdivision (a):  "[S]hoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950). . . .  Shoplifting shall be punished as a misdemeanor," providing the defendant does not have disqualifying prior convictions.  (See *People v. Contreras* (2015) 237 Cal.App.4th 868, 889–890.)  Hearn argues that we must reduce her felony conviction on count 12 (second degree commercial burglary from CVS) to misdemeanor shoplifting.

This we may not do.  Section 1170.18, subdivision (a) provides for a different procedure regarding a defendant in Hearn's position:  "A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence *before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with . . . Section 459.5 . . . .*"  (Italics added.)  Subdivision (b) of section 1170.18 provides that the trial court is to then determine whether the petitioner satisfies the criteria, and if so, the trial court shall recall the felony sentence and resentence the petitioner to a misdemeanor "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety," listing three factors for the trial court to consider.  "The trial court's decision on a section 1170.18 petition is inherently factual . . . ."  (*People v. Contreras*, *supra*, 237 Cal.App.4th at p. 892.)  An "important factual question that must be decided by the trial court 'in its discretion,' is whether 'resentencing the petitioner would pose an unreasonable risk of danger to public safety.'  (§ 1170.18, subd. (b).) . . . [T]hat determination must be made in the first instance by the trial court . . . ."  (*Ibid.*)  "[T]he voters have not expressed an intention to permit us on *direct appeal* to reduce defendant's felony convictions to misdemeanors," and Hearn "is limited to the statutory remedy set

forth in section 1170.18. . . ." (*People v. Shabazz*, *supra*, 237 Cal.App.4th at p. 309, 314.)  Hearn must file a petition in the trial court pursuant to section 1170.18, subdivision (a).

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

ROTHSCHILD, P. J.

MOOR, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.